[S. F. No. 15.   In Bank.—June 6, 1896.]

CITY OF HEALDSBURG, RESPONDENT, v. GEORGE V. MULLIGAN ET AL., APPELLANTS.

113 205
125 37

OFFICIAL BOND OF TREASURER—COMMON-LAW LIABILITY—ACTION AGAINST SURETIES—DEFENSE—BAILMENT—ROBBERY.—The official bond of a city treasurer, conditioned that he shall faithfully perform the duties of his office required by law, which requires him to safely keep all moneys coming into his hands, adds nothing to his common-law liability, as a bailee for hire of the money intrusted to his care, and it is a defense to an action against the sureties on the bond, that the moneys for the loss of which the action was brought were taken from his possession by robbers, by irresistible force and violence.

APPEAL from a judgment of the Superior Court of Sonoma County and from an order denying a new trial. R. F. CRAWFORD, Judge.

The facts are stated in the opinion of the court.

J. A. Barham, Rose & Pond, and J. T. Campbell, for Appellants.

The evidence does not show conversion on the part of

Mr. Mulligan. Section 876 of the municipal corporation act is the measure of his liability. The treasurer is not an insurer or debtor under this statute. The word "safely" imports only an undertaking to use due care. (*Ross* v. *Hill*, 2 Com. B. 877; 52 Eng. Com. L. 370; *United States* v. *Thomas*, 15 Wall. 342; Pol. Code, sec. 4161; Const., art. IV, sec. 21; Pen. Code, sec. 514; *Cumberland* v. *Pennell*, 69 Me. 357; 31 Am. Rep. 284; *Marx* v. *Parker*, 9 Wash. 473; 43 Am. St. Rep. 849.) If the officer has observed the highest care, vigilance, and diligence to prevent loss, and is robbed by irresistible force, it constitutes a valid defense to an action on his bond for recovery of such money. (*Walker* v. *British Guarantee Assn.*, 18 Ad. & El., N. S., 277; *Odd Fellows' etc. Assn.* v. *Janes*, 63 Cal. 605; Civ. Code, sec. 1511, subd. 2; Story on Bailments, secs. 25-7; 2 Spence's Equity Jurisprudence, 936, 937.) The provision of the statute under which Mulligan gave his bond and received the money is but the reassertion of the common-law doctrine of *vis major*. The common law is continued in force in this state. (Pol. Code, sec. 4468.) All the decisions relied upon by respondent which hold that robbery is not a defense have been overruled except *State* v. *Nevins*, 19 Nev. 162, 3 Am. St. Rep. 873, which is not entitled to weight, as it ignores the difference between robbery and mere theft or larceny, and is a loosely considered case. (*United States* v. *Thomas*, 15 Wall. 341-46; *Cumberland* v. *Pennell, supra; State* v. *Houston*, 78 Ala. 576; 56 Am. Rep. 59; *York County* v. *Watson*, 15 S. C. 1; 40 Am. Rep. 676; *Marx* v. *Parker*, 9 Wash. 373; 43 Am. St. Rep. 849.) The officer is a bailee for hire, and bound to exercise good faith and reasonable skill and diligence in the discharge of his duties, and, having done so, is not responsible for loss occurring without any fault on his part. (Mechem on Public Officers, secs. 297-303; Throop on Public Officers, secs. 225-28; *People* v. *Faulkner*, 107 N. Y. 483, and cases cited; Dalton on Sheriffs, 485; Watson on Sheriffs, 140.)

*E. M. Norton, W. W. Moreland,* and *Rutledge & Pressley,* for Respondent.

A denial by the treasurer of having any money of the city was in itself alone sufficient proof of conversion. (*People* v. *Van Ness,* 79 Cal. 88; 12 Am. St. Rep. 134.) Robbery is no defense to this action. (*State* v. *Nevin,* 19 Nev. 162; 3 Am. St. Rep. 873; *United States* v. *Prescott,* 3 How. 578, 587; *United States* v. *Morgan,* 11 How. 154, 162; *United States* v. *Dashiel,* 4 Wall. 182–85; *United States* v. *Keehler,* 9 Wall. 83; *Boyden* v. *United States,* 13 Wall. 17; *Bevans* v. *United States,* 13 Wall. 56; *Commonwealth* v. *Comly,* 3 Pa. St. 372; *State* v. *Harper,* 6 Ohio St. 607; 67 Am. Dec. 363; *Hancock* v. *Hazzard,* 12 Cush. 112; 59 Am. Dec. 171; *Muzzy* v. *Shattuck,* 1 Denio, 233; *State* v. *Powell,* 67 Mo. 395; 29 Am. Rep. 512; *Perley* v. *Muskegon County,* 32 Mich. 132; 20 Am. Rep. 637; *Thompson* v. *Trustees,* 30 Ill. 99; *State* v. *Moore,* 74 Mo. 413; 41 Am. Rep. 322; *Commissioners* v. *Lineberger,* 3 Mont. 231; 35 Am. Rep. 462; *District Tp.* v. *Morton,* 37 Iowa, 550; *District Tp.* v. *Smith,* 39 Iowa, 9; 18 Am. Rep. 40; *State* v. *Walsen,* 17 Col. 170, citing as authority *United States* v. *Prescott, supra,* and other similar cases; *Ward* v. *School Dist.,* 10 Neb. 293; 35 Am. Rep. 477; Municipal Corporation Act of 1883, secs. 853, 876, 878; Const., art. XI, secs. 16, 17; Pen. Code, sec. 424; Pol. Code, secs. 923, 924, 954, 4161; Dillon on Municipal Corporations, sec. 237; 2 Parsons on Contracts, 159; *Mateer* v. *Brown,* 1 Cal. 221; 52 Am. Dec. 303; *Pinkerton* v. *Woodward,* 33 Cal. 557; 91 Am. Dec. 657.) The treasurer is not a mere bailee. (*United States* v. *Prescott, supra; United States* v. *Morgan, supra; United States* v. *Dashiel, supra; Boyden* v. *United States, supra; Commonwealth* v. *Comly, supra; State* v. *Harper supra; Muzzy* v. *Shattuck, supra; Hancock* v. *Hazzard supra; Clay County* v. *Simonson,* 1 Dak. 403; Murfree on Official Bonds, secs. 200–694; *San Francisco* v. *Heynemann,* 71 Cal. 153; *People* v. *Van Ness, supra; People* v. *Burkhart,* 76 Cal. 608; *State* v. *Walsen, supra.*) Events

against which parties could have provided in their contracts shall never be alleged as an excuse for the nonperformance of obligations into which they have entered. (*Tompkins* v. *Dudley*, 25 N. Y. 272; 82 Am. Dec. 349, and authorities therein cited; *District Tp.* v. *Smith, supra; Boyden* v. *United States, supra; Harmony* v. *Bingham*, 12 N. Y. 99; 62 Am. Dec. 142, and authorities therein cited; 5 Lawson's Rights, Remedies, and Practice, sec. 2520, p. 4170, and note, sec. 2516, p. 4166; Murfree on Official Bonds, sec. 200.) Robbers are not public enemies within the meaning of *United States* v. *Thomas*, 15 Wall. 346. (*State* v. *Moore, supra.*) When the language of the bond is " shall well, truly, and faithfully, safely keep," etc., the obligation to keep safely the public money is absolute without condition, express or implied; and nothing but payment of it when required can discharge the bond. (*United States* v. *Keehler, supra; United States* v. *Dashiel, supra; Bevans* v. *United States, supra; State* v. *Harper, supra; State* v. *Nevin, supra; Thompson* v. *Trustees, supra; County Commrs. of Hennepin County* v. *Jones*, 18 Minn. 204; *County Commrs. of McLeod County* v. *Gilbert*, 19 Minn. 216.) The courts of the United States follow the rule of the common law in all cases arising where the state in which the controversy arises has adopted the common law. (*Fenn* v. *Holme*, 21 How. 481.) In every state where the common law prevails, with the exception of Maine and Alabama, the rule of *United States* v. *Prescott, supra*, has been adopted either in its entirety or with slight modifications.

HAYNES, C.—This is an action brought upon the official bond of George V. Mulligan, as treasurer of the city of Healdsburg, and his sureties, to recover the sum of three thousand five hundred and forty-one dollars and forty-nine cents with interest thereon, which moneys, it is alleged, were received by said treasurer on or about October 20, 1893, and which, in breach of his said trust, said Mulligan converted to his own use, and

refused to account to the plaintiff therefor, or to pay out said sum on the warrant of the president of the board of trustees, countersigned by the clerk thereof.

The answer consists of two defenses. The first puts in issue the alleged breach of trust, conversion and refusal to pay out said moneys; and the second defense alleged, at great length and particularity, that the city of Healdsburg owned a city hall, in which was an office for the treasurer, and a vault in which he kept, and was required to keep, the funds of the city, and that on October 20, 1893, he had in said vault the said sum of three thousand five hundred and forty-one dollars and forty-nine cents, and that at about 4 A. M. of that day he was seized by robbers, carried to the vault, and compelled, by irresistible force and violence, and against his will, to open the vault, and that the said money was taken by the robbers by such irresistible force and violence.

Upon motion of the plaintiff said second defense was stricken out, and the defendants excepted.

Afterward, George V. Mulligan died, and Frances Mulligan was appointed and qualified as his executrix, and plaintiff afterward filed a supplemental complaint, making the original complaint a part thereof by reference, and alleging the death of George V. Mulligan, the appointment of the executrix, and that plaintiff's claim had been presented to and rejected by her.

Answers, in substance the same as those originally filed, were filed to the supplemental complaint, and plaintiff demurred to said second defense, and the demurrer was sustained.

The cause was tried by the court without a jury. Findings and judgment went for the plaintiff, and defendants appeal from said judgment and from an order denying their motion for a new trial.

The findings were general, viz: That all the allegations of the complaint were true, and those of the answer untrue; and it was therefore found that "the said defendant, George V. Mulligan, on or about said

twentieth day of October, 1893, in breach of his said trust, converted to his own use the said sum of three thousand five hundred and forty-one dollars and forty-nine cents, and refused to account to the plaintiff therefor, or for any part thereof, and refused to pay out any part thereof on the warrant signed," etc.

The principal question presented by the record is, whether the forcible taking of the moneys in question from the custody of the treasurer by robbers is a defense to an action upon his bond.

"A public officer having property in his custody in his official capacity is a bailee, and the rules which grow out of that relation are held to govern the case; but the legislature can undoubtedly at its pleasure change the common-law rule of responsibility." (*United States* v. *Thomas*, 15 Wall. 337, 344.) The receipt of money by a public officer, such as Mulligan in this case, does not create the relation of debtor and creditor. The money received by him is not his, and he can only become a debtor when he becomes a defaulter; and whether he became a defaulter is a question raised by the second defense in the answer to which a demurrer was sustained. That at common law a bailee for hire would not be responsible for moneys stolen from him or taken from him by robbery, without his fault or neglect, is a proposition so well settled that authorities need not be cited.

In the case before us, however, it may be that the responsibility of the treasurer has been enlarged, either by the statutes relating to such officers or by the terms of his contract embodied in his official bond; and we must, therefore, look to the statute and the bond for the purpose of determining whether Mulligan's common-law liability has been enlarged. The condition of Mulligan's bond was in the following language: "Now, therefore, the condition of this obligation is such that if the said George V. Mulligan shall well and faithfully perform all official duties now required of him by law, and shall well and faithfully execute and perform all

the duties of such office of treasurer required by any law to be enacted subsequently to the execution of this bond, then this obligation is to be void and of no effect; otherwise to remain in full force and effect."

The constitution, article II, section 16, requires that: "All moneys collected for the use of any county, city, town, or other public municipal corporation, coming into the hands of any officer thereof, shall immediately be deposited with the treasurer or other legal depositary to the credit of such city, town, or other corporation, respectively, for the benefit of the fund to which they respectively belong."

Section 17 of the same article provides: " The making of profit out of county, city, town, or other public moneys, or using the same for any purpose not authorized by law, by any officer having the possession or control thereof, shall be a felony, and shall be prosecuted and punished as prescribed by law."

Section 876 of the municipal corporation act, so far as material, is as follows: " It shall be the duty of the treasurer to receive and safely keep all moneys which shall come into his hands as treasurer. . . . . He shall pay out said money on warrants signed by the president and countersigned by the clerk, and not otherwise; . . . . and for his compensation he shall be allowed one per cent on all moneys received and paid out by him as such treasurer."

By section 853 of the same act it is provided, among other things, that " all the provisions of any law of this state relating to the official bonds of officers shall apply to such bonds, except as herein otherwise provided."

If anything were required to show that Mulligan, as treasurer of the city, was a bailee of all the moneys received by him as such treasurer, and that the *receipt* of the money did not make him a *debtor*, the above provisions of the constitution and statutes would conclusively show it.   It may be added, however, by section 424 of the Penal Code, the loaning of such money by the officer; or the appropriation thereof to his own use; or fail-

ing to keep the same in his possession; or changing or converting any portion thereof from coin into currency, or from currency into coin or other currency, without authority of law, makes such officer an embezzler, and subjects him to imprisonment in state's prison. If, therefore, the receipt of the money made him a *debtor*, the money, when received, became his; and, if his, he could not embezzle it. All these provisions are based upon the theory that money in the hands of the treasurer is the money of the municipality, and that the treasurer is but the custodian or bailee of the money for the municipality.

It is conceded that the requirements of the municipal corporation act make it the duty of the treasurer " to safely keep all moneys which shall come to his hands as treasurer," and that " he shall pay out said money on warrants signed by the president and countersigned by the clerk, and not otherwise," and that these requirements are included in the conditions of his bond.

These statutory provisions, however, do not add to the common-law liability of the treasurer. " When the treasurer elect accepts his office he thereby takes upon himself all the duties thereof, general as well as special. His general duties, arising from the very nature of his office, are to receive the money of the county lawfully deposited with him, keep it safely, and pay it out according to law. From these general duties, accepted, springs the legal obligation that he will bring to their performance good faith and reasonable skill and diligence; to enforce which, the statute already referred to requires him to take upon himself the moral obligation of an oath that he will faithfully perform the duties which he has assumed, and give a bond, with sureties, with a condition of like import." (*Cumberland* v. *Pennel*, 69 Me. 357, 365; 31 Am. Rep. 284.)

And, in *State* v. *Harper*, 6 Ohio St. 607, 610, 67 Am. Dec. 363, it was said: " By accepting the office the treasurer assumes the duty of receiving and safely keeping the public money, and of paying it out according to law."

If this be true, it will be seen that the condition of the bond given by Mulligan does not enlarge his common-law liability. Counsel for respondent, however, has cited a very large number of cases to the point that robbery is no defense to an action upon this bond. The first case cited under this head is that of *United States* v. *Prescott*, 3 How. 578. Following this he cited five other cases from the supreme court of the United States, which, it is claimed, support his contention.

*United States* v. *Prescott, supra,* was a suit upon the bond of a receiver of public moneys conditioned that "he should well, truly, and faithfully, keep safely, without loaning or using, all the public moneys collected by him, or otherwise at any time placed in his possession and custody till the same had been or should be ordered by the proper department or officer of the government to be transferred or paid out; and when such orders for transfer or payment had been or should be received, had faithfully and promptly made, and would faithfully and promptly make, the same as directed."

The defense was the felonious taking and carrying away of the moneys without any fault or negligence on the part of the receiver. It was held that this defense was not within the condition of the bond; that the defendant knew the extent of his obligation when he entered into it, and had realized the force of his obligation by the enjoyment of the office. The court said: "Shall he be discharged from liability contrary to his own express undertaking? There is no principle on which such a defense can be sustained. The obligation to keep safely the public money is absolute, without any condition, expressed or implied; and nothing but the payment of it, when required, can discharge the bond."

In *United States* v. *Thomas, supra,* the case of *United States* v. *Prescott, supra,* was virtually overruled. After quoting from the Prescott case as above, the court said: "This broad language would seem to indicate the

opinion that the bond made the receiver and his sureties liable at all events, as now contended for by the government; but that case was one in which the defense set up was that the money was stolen, and a much more limited responsibility than that indicated by the above language would have sufficed to render that defense nugatory. And, as the money in the hands of the receiver is not his, as he is only custodian of it, it would seem to be going very far to say that his engagement to have it forthcoming was so absolute as to be qualified by no condition whatever, not even a condition implied in law. Suppose an earthquake should swallow up the building and safe containing the money; is there no condition implied in the law by which to exonerate the receiver from responsibility?" The court there also referred to the cases of *Muzzy* v. *Shattuck*, 1 Denio, 233, *Commonwealth* v. *Comly*, 3 Pa. St. 372, *State* v. *Harper*, *supra*, and the then recent cases of *United States* v. *Dashiel*, 4 Wall. 185, *United States* v. *Keehler*, 9 Wall. 588, and *Boyden* v. *United States*, 13 Wall. 22, in that court, all of which are cited by respondent. In another part of the opinion in *United States* v. *Thomas*, *supra*, it was said: "Where, however, a statute merely prescribes the duties of the officer, as that he shall safely keep money or property received or collected, and shall pay it over when called upon to do so by the proper authority, it cannot, without more, be regarded as enlarging, or in any way affecting, the degree of his responsibility. The mere prescription of duties has nothing to do with the question as to what shall constitute a rule of responsibility in the discharge of those duties, or a legal excuse for the nonperformance of them, or a discharge from their obligation. The common law, which is common reason, prescribes that; and statutes in subordination to their terms are to be construed agreeably to the rules of the common law."

The court in the same case noticed a distinction between an official bond and an ordinary money bond, saying that: "The condition of an official bond is collateral

to the obligation or penalty; it is not based on a prior debt, nor is it evidence of a debt; and the duty secured thereby does not become a debt until default be made on the part of the principal. Until then, as we have seen, he is a bailee, though a bailee resting under special obligations. The condition of his bond is, not to pay a debt, but to perform a duty about and respecting certain specified property which is not his, and which he cannot use for his own purposes."

In that case Justices Swain, Miller, and Strong dissented. Justice Miller, for himself, referring to the case of *United States* v. *Prescott, supra,* said: "In the subsequent case of *United States* v. *Morgan,* 11 How. 154, the same question was decided on precisely the same grounds. The case of *United States* v. *Dashiel, supra,* was decided with merely a reference to the doctrine of the two cases just cited. The case of *United States* v. *Keehler, supra,* asserts the same doctrine, and applies it to an action on a postmaster's bond. He had paid the money to the agent of the confederate states on an order made by the insurrectionary government directing him to do so. When the case of *United States* v. *Dashiel, supra,* came before the court I was not satisfied with the doctrine of the former cases, and I do not believe now that on sound principle the bond should be construed to extend the obligation of the depositary beyond what the law imposes on him, though it may contain words of express promise to pay over the money. I think the true construction of such a promise is to pay when the law would require it of the receiver if no bond had been given; the object of taking the bond being to obtain sureties for the performance of that obligation. Nor do I believe that prior to this decision there was any principle of public policy recognized by the courts, or imposed by the law, which made the depositary of the public money liable for it, when it had been lost or destroyed without any fault, or negligence, or fraud on his part, and when he had faithfully discharged his duty in regard to its custody and safe-keeping. Such were

my opinions when, as a member of the court, I took part in the decision of *United States* v. *Dashiel, supra.* But, either no other judge shared those opinions, or, if anyone did, he felt bound by the two previous decisions. I therefore acquiesced."

So, in *Cumberland* v. *Pennell, supra,* in a very learned opinion, in which the authorities are largely cited and reviewed, it is declared that *United States* v. *Prescott, supra,* for the first time promulgated the extreme views therein expressed.

Of the cases cited by respondent, the following are based upon statutes which made the officer a debtor as to all the funds received in his official capacity: *Muzzy* v. *Shattuck, supra; Hancock v. Hazard,* 12 Cush. 112; 59 Am. Dec. 171; *Perley* v. *County of Muskegon,* 32 Mich. 132; 20 Am. Rep. 637. And these cases are cited in nearly all of the other cases cited by respondent.

It must be evident that, if the defendants in these cases were debtors as to all the funds received by them in their official capacity, they could not be bailees of their own property, nor embezzle it, nor could a larceny or robbery of their own property relieve them from their debts. Other cases, and all of them that discuss the grounds upon which the liability of the officer is placed, base their conclusions upon the contract contained in the bond, to keep safely and pay over the funds on proper warrants therefor.

In speaking of the official bond as a contract, Mr. Justice Bradley, in *United States* v. *Thomas, supra,* drew a distinction between an ordinary contract or agreement and an official bond. The learned justice said: "So much stress, has, in almost every case, been laid upon the bond as forming, either directly or indirectly, the basis of a new rule of responsibility, that it seems especially important to ascertain what are the legal obligations that spring from such instruments. The learned judges, in the great generality of the remarks made in some of the cases referred to, with regard to the liability of a receiving officer, and especially of his sureties, by

virtue of his bond, have evidently overlooked what we consider to be a very important and vital distinction between an absolute agreement to do a thing, and a condition to do the same thing, inserted in a bond. In the latter case, the obligor, in order to avoid the forfeiture of his obligation, is not bound at all events to perform the condition, but is excused from its performance when prevented by the law, or by an overruling necessity. And this distinction, we think, affords a solution to the question involved in this case."

In the state of New York, *Supervisors of Albany County* v. *Dorr*, 25 Wend. 440, fully sustains the views we have taken of the liability of a public officer upon his bond. The opinion in that case was written by Chief Justice Nelson and concurred in by Justices Bronson and Cowen, in the supreme court. The case was carried to the court of errors, where the judgment was affirmed by an equally divided court.

In *People ex rel Nash* v. *Faulkner*, 107 N. Y. 477, 1 Am. St. Rep. 891, the action was upon a surrogate's bond. The general reasoning of the case clearly sustains our conclusion in this case, although a distinction was there drawn between moneys in the hands of a surrogate, and moneys received by a treasurer or other public officer of that character. So that so far as the question here is concerned, there has been no direct adjudication by the court of appeals of that state, and the question is left open.

The supreme court of South Carolina, in an able opinion, sustains the view we have taken. There the treasurer deposited money in a bank of good repute, and the money was lost by its failure. The court referred to *United States* v. *Prescott, supra,* and the other leading cases which lay down the strict rule of liability, and, following *United States* v. *Thomas, supra,* held that the defendant was not liable. (*York County* v. *Watson*, 15 S. C. 1; 40 Am. Rep. 675.)

In *Walker* v. *Guarantee Assn.*, 18 Ad. & E., N. S., 277,

the action was upon the bond of the treasurer of a benefit building society, organized under a statute. The conditions of the bond were that he would faithfully discharge the duties of treasurer, and punctually account to the trustees for all and every sum and sums of money, bills, notes, securities, goods, and chattels, which he, in his office of treasurer, shall receive on the society's account, and being bound by the rules of the society to pay over in a given time the same moneys which he shall receive; and it was held that the treasurer did not violate such obligation if, after receiving moneys, and before he has an opportunity of paying them over, he is robbed of them by irresistible violence, and without fault of his own, such obligation being that only of a bailee. Lord Campbell, C. J., said: "This plea alleges a loss of the money by *irresistible violence;* and the general doctrine is not denied, that if the subject matter bailed be lost by *vis major,* which we translate irresistible violence, the bailee is discharged."

In *Cumberland* v. *Pennell, supra,* the court cited an unreported opinion of Mr. Justice Story, of the United States circuit court, at the May term, 1822. In relation to that case it was said: "The doctrine that the official bond of a public depositary rendered him the insurer of the public funds in his possession is nowhere recognized by Judge Story. On the contrary, he was of the opinion that robbery is a good defense. Colonel John L. Tuttle, a United States paymaster, was murdered and robbed of the public funds held in his official capacity, and an action was brought therefor against his administrator. In the trial of the action at the May term, 1822, of the United States circuit court in Boston, the defense of robbery was set up, and the jury, under the instructions of Judge Story presiding, returned a verdict for the defense—showing that the court must have ruled that robbery was a good defense. It seems the question was not carried any farther, and hence the case was not reported."

We cannot better conclude this opinion than by another quotation from the case of *Cumberland* v. *Pennell,* *supra:*

" Were the law otherwise in this state, and known to be such, faithfulness and honesty, even if they continued to be considered commendable personal qualities, would be held, if not mere abstractions, matters of secondary importance at best in candidates.   Such qualifications, accompanied by the highest capability, would, in the absence of sufficient property in the principal to secure his sureties, fail to obtain them.   For many a responsible person would gladly sign a bond as surety, guaranteeing the faithfulness, honesty, and capacity of his neighbor, which were so potent in effecting his election to the responsible public station of county treasurer, who would long hesitate to insure the public against possible loss happening in spite of such qualities; for to insure against such a loss is not only vouching for the integrity of the officer, but practically for that of the rest of mankind—that they will not rob him."

We therefore conclude that the obligation resting upon Mulligan, as treasurer of the city of Healdsburg, was simply that which the common law imposes upon him as a bailee for hire; that the provisions of the statute to keep safely and pay over the money received by him in his official capacity were duties which would have rested upon him as such bailee in the absence of these provisions of the statute, and did not enlarge his responsibility or that of his sureties; and that, if he were violently robbed of the moneys of the city in his possession, it is a defense to the action.   The burden of proving such defense, of course, rests upon him and his sureties.   The question here, however, arises upon a demurrer to the second defense which alleges the robbery, and, therefore, as now presented, the fact of robbery is conceded.

As to the effect of the conclusion above stated, little need be said. It is urged, in many of the cases which hold

the officer to an absolute responsibility for all moneys coming to his hands, that if robbery or larceny were held to be a defense, it would endanger the security of public funds, and encourage simulated robberies and pretended larcenies.  But we cannot assume that courts of justice are unable to protect the public in such cases; and even if they could not do so in all cases, justice does not require that the public shall be protected by enforcing against its servant, the officer, and his sureties, a liability the law has not imposed upon them, and which they have not assumed.

No other question need be noticed.

The judgment and order appealed from should be reversed, with directions to the court below to overrule the demurrer to the second defense set up in defendant's answer.

BELCHER, C., and BRITT, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed, with directions to overrule the demurrer to defendant's second defense.

HARRISON, J.,     GAROUTTE, J.,
VAN FLEET, J.,     McFARLAND, J.,
HENSHAW, J.

BEATTY, C. J., dissented.

Rehearing denied.