## THORNTON v. ATHENS NAT. BANK.
### (No. 961.)

(Court of Civil Appeals of Texas. Beaumont. May 14, 1923. Rehearing Denied May 23, 1923.)

1. **Bailment** ⟐—1—Contract should not be construed unfavorably to bailee beyond obvious scope of its terms.

The only rule which may be laid down as to the extent an agreement to keep or safely carry varies the general implied obligations of a bailee would seem to be not to expound the contract unfavorably to the bailee beyond the obvious scope of its terms.

2. **Banks and banking** ⟐—153—Bank's receipt for Liberty Bonds deposited for safe-keeping held not an agreement to absolutely produce the bonds or pay their value.

Where a customer of a bank deposited Liberty Bonds with the bank for safe-keeping, taking a receipt reciting that the bonds "are left for safe-keeping and are the property of the said T., and are to be delivered to him or his assigns upon return of this receipt," such receipt did not constitute an agreement to absolutely produce the bonds or pay their value in case they were stolen, but merely evidenced the receipt of the bonds by the bank and the purpose for which they were deposited.

3. **Banks and banking** ⟐—153—To be held as insurer of government bonds deposited for safe-keeping bank must agree to pay value if bonds not returned.

That a bank wherein government bonds are deposited for safe-keeping may be held as an insurer, the receipt of the bank must stipulate for the return of the bonds or to pay the value thereof in the event they are not returned.

4. **Banks and banking** ⟐—153—Consideration necessary to hold bank as insurer of government bonds deposited for safe-keeping.

In order that a bank with which government bonds are deposited for safe-keeping may become an insurer thereof, there must be a consideration for the contract of insurance.

5. **Banks and banking** ⟐—153—Collection of interest coupons of government bonds by bank not a sufficient consideration to support contract of insurance covering bonds deposited for safe-keeping.

That a customer of a bank who deposited with it government bonds for safe-keeping was a regular customer of the bank, carrying a cash deposit account of considerable size for many years for which he received no pay, and that the interest coupons of the bonds were clipped therefrom and deposited to his cash account, was not a sufficient consideration to support a contract of insurance under which

the bank became liable to the depositor as insurer for the return of the bonds.

**6. Banks and banking ⊗═▷153—Fact of being general depositor in bank not sufficient consideration to support contract of insurance covering bonds deposited for safe-keeping.**

That a special depositor in a bank is also a general depositor is not, of itself, sufficient consideration to support a contract of insurance binding the bank as an insurer for government bonds deposited with it by the depositor for safe-keeping.

**7. Bailment ⊗═▷12, 33—Bailee without hire responsible only for good faith and "ordinary diligence," to be determined by the jury.**

A bailee without hire is responsible only for good faith and ordinary diligence, that is, such diligence as an ordinarily prudent man would exercise in matters of his own business, and this is to be determined by the jury under proper instructions.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Ordinary Diligence.]

**8. Bailment ⊗═▷14(1)—Bailee for hire held to reasonable care.**

A bailee for hire is held to reasonable care in keeping the property constituting the subject of the bailment.

**9. Banks and banking ⊗═▷154(8)—Finding that bank holding Liberty Bonds for safe-keeping had exercised ordinary care sustained.**

In an action by a bank depositor against the bank to recover the value of certain Liberty Bonds which he had deposited with the bank for safe-keeping, and which were taken from the bank by robbers, evidence *held* to sustain a finding that the bank was not guilty of gross negligence, but had exercised ordinary care in keeping the bonds.

**10. Appeal and error ⊗═▷1060(1)—Argument apprising jury as to how to answer special findings in order to decide for defendant held harmless error.**

That defendant's counsel in his argument stated to the jury that, if they wished to decide for defendant, they must answer the special issues in a certain manner, while improper, did not constitute ground for reversal where the issues were so plain and the effect of findings thereon so easily understood that the jury could fully comprehend the result of their findings upon the disposition of the case.

**11. Appeal and error ⊗═▷725(2)—Assignments of error held too indefinite to be considered.**

An assignment of error that "the court erred in overruling plaintiff's special exceptions Nos. 1, 2, 3, 4, 5, 6, 7, and 8, as shown in the first supplemental petition of plaintiff, all of which has been duly presented to the court," *held* too indefinite to be considered.

**12. Appeal and error ⊗═▷736—Multifarious assignment of error not considered.**

An assignment of error which is multifarious will not be considered.

**13. Judgment ⊗═▷199(1)—Doctrine of judgment non obstante veredicto does not obtain in Texas.**

The doctrine of judgment non obstante veredicto does not obtain in Texas, since, under Vernon's Sayles' Ann. Civ. St. 1914, art. 1994, it is the duty of the court to enter judgment in conformity with the verdict whether correct or not, and this whether the error in the verdict arose from erroneous instructions or from a misinterpretation of the evidence by the jury.

Appeal from District Court, Henderson County; W. R. Bishop, Judge.

Action by Wiley Thornton against the Athens National Bank. Judgment for defendant, and plaintiff appeals. Affirmed.

J. J. Faulk and A. B. Watkins, both of Athens, for appellant.

Phillips, Townsend & Porter, of Dallas, and Sam Holland, of Athens, for appellee.

O'QUINN, J. Thornton sued the bank to recover the sum of $5,000, the value of Liberty Bonds which he had deposited with the bank for safe-keeping in 1918, and which were forcibly taken from the bank by robbers on July 13, 1920. Plaintiff alleged that he had been a regular customer of the bank for more than 10 years, depositing his money and valuable papers therewith; that he had complete faith in the business ability and integrity of the defendant and its officers and employés; that in 1918 he deposited Liberty Bonds, in the sum of $5,000, with the defendant for safe-keeping; that defendant issued to plaintiff its receipt for said bonds, to the effect that same had been deposited with defendant for safe-keeping, and obligating itself to return same to plaintiff upon the return of said receipt; that said bonds were United States unregistered bonds, payable to bearer; that he had demanded said bonds, and defendant had failed and refused to deliver same; that about June 10, 1920, plaintiff instructed defendant and its agents and officers to have said bonds exchanged for other and new bonds of the United States, which they agreed to do, but which they neglected to do, and but for which neglect said bonds would not have been lost at the time of said robbery.

Defendant answered by general denial and specially under oath: (1) That it did not obligate itself to safely keep said bonds; (2) that it did not agree to exchange said bonds for new ones; (3) that it not only did not make any agreement to exchange said bonds for new ones, but that there was no consideration for any such agreement; (4) that the bank received no consideration for the keeping of said bonds, but that the act of receiving said bonds for safe-keeping was entirely gratuitous, and without consideration; (5)

---

⊗═▷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

that on July 13, 1920, at the noon hour, and while the bank was open for business, bank robbers forcibly took possession of and carried away from the bank the bonds in question, together with other bonds and money in the bank; (6) and that defendant had exercised due precaution in its effort to safely keep said bonds and other property in its possession, and was guilty of no negligence.

The case was submitted to a jury upon the following special issues:

"First. Were the bonds deposited by the plaintiff in the bank, left there with the understanding that the bank collect the interest coupons as they became due and deposit the amount collected to the credit of plaintiff?"

To which the jury answered, "No."

"Second. Did the plaintiff request the bank and did the bank agree to exchange the bonds for permanent coupon bonds?"

To which the jury answered, "No."

"Third. Did the employés of the bank exercise such degree of care as an ordinarily prudent person would under the same circumstances to protect the bonds from loss by robbery?"

To which the jury answered, "Yes."

"Fourth. Did the employés of the bank exercise only such slight degree of care as to justify the belief that they were indifferent to the interest of the plaintiff and those for whom he acted in depositing the bonds, to protect the bonds from loss by robbery?"

To which the jury answered, "No."

Upon the answers of the jury judgment was rendered for appellee, from which appellant has appealed.

Appellant groups his first four propositions, presenting, as we understand his brief, the liability of appellee under the contract evidenced by the receipt given by appellee for the deposit of the bonds, and insists that appellee, by reason of said receipt, became and was an insurer of the safety of the bonds, and could discharge its liability to appellant only by returning the bonds or by the payment of their value, urging (in his written argument) that—

"Where a party by his own contract in writing, as the bank has done in this case, creates a duty or charge upon himself, he is bound to make it good, although the accident may have been inevitable and beyond his power to prevent, for the very good reason that he might or had an opportunity to provide against them by his own contract, but chose not to do so. The bank made a contract with Thornton to safely keep his bonds and return them to him, without any qualification, limitation or exception, and it must abide by its contract by either returning the bonds or paying damages."

[1] We cannot agree with appellant in this contention. It is true that a bailee may, by special contract or agreement, enlarge his liability so as to become an insurer of property bailed, but to what extent an agreement to keep or safely carry actually varies the general implied obligations of a bailee, and for what casualties under such agreement he is rendered liable, and for what excused, it does not seem possible to lay down any general rule. The only rule to be adduced from the authorities would seem to be not to expound the contract unfavorably to the bailee beyond the obvious scope of its terms. Story on Bailments, §§ 35, 36. Does the agreement upon which appellant relies (the receipt) show that appellee obligated itself as an insurer? The bonds were deposited in four parcels, amounting to $5,000, and the receipt in each instance was the same, varying only as to the amount deposited, and worded as follows:

"Wiley Thornton has deposited in this bank $2,000 government bonds bearing interest at 4¼ per cent. The above bonds are left for safe-keeping and are the property of said Wiley Thornton, and are to be delivered to him or his assigns upon return of this receipt. March 16th, 1918.
                    "By I. P. LaRue, Cashier."

[2] We do not think that the receipt was an agreement to absolutely produce the bonds or to pay their value, but rather that it merely evidenced the receipt of the bonds by the bank and the purpose for which they were deposited. Whitney v. Bank, 55 Vt. 155, 45 Am. Rep. 598; Bank v. Graham, 79 Pa. 106, 21 Am. Rep. 49; City of Healdsburg v. Mulligan, 113 Cal. 205, 45 Pac. 337, 33 L. R. A. 461.

In Whitney v. Bank, supra, Whitney deposited United States bonds with the bank for safe-keeping, the bank giving him the following receipt:

"The National Bank of Brattlesboro, Brattlesboro, Vt., July 23, 1866. Received of J. D. Whitney $4,000 for safe-keeping, as a special deposit.        S. M. Waite, C."

The bonds were deposited in the bank's safe, with the valuables of the bank, and it was claimed that the bonds were taken therefrom by robbery. The safe was left open during the business hours for the transaction of business, and only one person was left in charge of the bank during the noon hour. The trial court charged the jury that there was evidence of a special agreement to keep the bonds safely. But the Supreme Court said:

"But, as has been intimated, the leaving the bonds for 'safe-keeping,' or accepting them for that avowed purpose, is not a covenant or warranty that the defendant will protect the bonds absolutely from all danger, or indemnify the plaintiff against loss, but is rather a declaration of the purpose of the parties in placing them in the defendant's safe, and giving the protection and immunity which the means of safety in the bank afforded like securities of the defendant."

It was held that the bank was a gratuitous bailee, and therefore liable only for gross negligence, and that the evidence did not show gross negligence.

In the case of Bank v. Graham, supra, the plaintiff deposited $4,000 in United States bonds with the bank, and received the following receipt:

"Carlisle, Pa., October 22d, 1868.

"Miss F. L. Graham has left in this bank, for safe-keeping, four thousand dollars in U. S. 5–20 bonds of 1867, to be returned on the return of this receipt.

"Charles H. Hepburn, Cashier."

When plaintiff demanded the bonds they were not delivered to her, the officers of the bank informing her that they had been stolen from the vault of the bank with other valuables belonging to the bank. The receipt given for the bonds in this case, as in the case at bar, recites that the bonds were "left for safe-keeping," and that they were "to be returned on the return of this receipt." We take it that the terms, so far as indicating purpose and liability are concerned, are identical. The trial resulted in a judgment for the plaintiff, but the Supreme Court reversed the judgment, and held that the bank was a gratuitous bailee and liable only for gross negligence.

City of Healdsburg v. Mulligan, supra, was an action brought upon the official bond of Mulligan as treasurer of the city of Healdsburg to recover $3,541.49, which it was alleged he had received and refused to pay over, but had converted to his own use. Defendant pleaded, and it was not, as a matter of fact, disputed, that he was compelled, at the hour of 4 a. m., by robbers, by force and against his will, to open the vault of the safe furnished him by the city in which to keep said funds, and that said money was forcibly taken by the robbers. Mulligan had executed an official bond, conditioned:

"Now, therefore, the condition of this obligation is such that if the said George V. Mulligan shall well and faithfully perform all official duties now required of him by law, and shall well and faithfully execute and perform all the duties of such office of treasurer, * * * then this obligation is to be void and of no effect; otherwise, to. remain in full force and effect."

An ordinance of the city provided:

"It shall be the duty of the treasurer to receive and safely keep all money which shall come into his hands as treasurer. * * * He shall pay out said money on warrants signed by the president and countersigned by the clerk, and not otherwise."

These requirements were, of course, included in the conditions of his bond. His general duties, arising from the very nature of his office, were to receive the money of the city lawfully deposited with him, keep it safely, and to pay it out according to law. The question there was: Did the statutory provisions add to the common-law liability of the treasurer as bailee of the fund? It

was contended on the one hand that they did, and that he was liable in any event, while on the other it was insisted that they did not, and that, the funds having been lost through an irresistible force, to wit, the robbery, defendant was not liable. It was held that the provisions of the statute to safely keep and pay over the money received by him in his official capacity did not enlarge his common-law liability; in other words, that the recitations in the bond and ordinance were merely descriptive of his duty, and could not be regarded as affecting the degree of his liability, and that the fact of the robbery was a defense to the action.

Appellant cites us to Navigation Co. v. Davidson, 32 Tex. Civ. App. 492, 74 S. W. 790, as authority for the proposition that the receipt was a contract binding appellee absolutely to return the bonds or to pay their value. In that case Davidson hired a boat to the Navigation Company, which the company agreed to return to him in as good condition as when they received it. It was alleged that the company negligently tied the boat up to the wharf at Galveston in such way as to cause it to beat and pound against the wharf, and become so damaged as to be worthless, and he sued for $5,000. The company, among other things, answered that, if the boat was injured at all, it was not because of any negligence on the part of the company, but because of high seas and storms, the act of God, which were beyond defendant's control. The court held that, if the contract was that the boat was to be returned to the owner in as good condition as received, then the contract was absolute, and could not be avoided by the act of God, the public enemy, or any vis major. We think this decision is against the weight of authority in this state and other states on the question under discussion. It does not seem to have been followed; but in the case of Cleaver v. Drake-Brannum Const. Co., 195 S .W. 207, on motion for rehearing, the Galveston Court, speaking through Judge Lane, declares it to be out of harmony with the great weight of authority, and refuses to follow it, citing many authorities.

[3–6] For the contract as evidenced by the receipt to have bound the bailee, the bank, as an insurer of the bonds, it must have stipulated for the return of the bonds or to pay the value thereof in the event they were not returned. 3 R. C. L. § 30, p. 105; Miller v. Morriss, 55 Tex. 412, 40 Am. Rep. 814; Grady v. Schweinler, 16 N. D. 452, 113 N. W. 1031, 14 L. R. A. (N. S.) 1089, 125 Am. St. Rep. 674, 15 Ann. Cas. 161; Cleaver v. Drake-Brannum Const. Co. (Tex. Civ. App.) 195 S. W. 206; Sanchez v. Blumberg (Tex. Civ. App.) 176 S. W. 904. Furthermore, for the bank to have become an insurer of the bonds there must have been a consideration for the contract of insurance. It is not contended by

appellant that appellee was to be paid or that it received anything for the safe-keeping of the bonds, but appellant does contend that his being a regular customer of the bank, carrying a cash deposit account of considerable size for many years, for which he received no pay, and the interest coupons of the bonds having been clipped from the bonds and deposited to the cash account of appellant, constituted and was a sufficient consideration to support such a contract. We do not think appellant's contention is sound. There must have been a compensation for the act of "safe-keeping" itself. The fact that the special depositor was also a general depositor in the bank is not sufficient, unless the contract of special bailment stipulated for the retention of the general deposit account, for the benefits to the bank derived through the general deposit account of a depositor are wholly contingent upon the will of the depositor, can be withdrawn at the pleasure of the depositor, and, therefore, cannot amount to a consideration for a special deposit for safe-keeping, and cannot affect or determine the character of the bailment. Merchants National Bank v. Guilmartin, 88 Ga. 797, 15 S. E. 831, 17 L. R. A. 325; Citizens' National Bank v. Ratcliff & Lanier (Tex. Civ. App.) 238 S. W. 364. In the case last cited bonds were deposited with the bank by a regular customer, and the owners of the bank, desiring to sell same, authorized the bank to make sale of same at the best price obtainable. The bank agreed to sell the bonds without commission, but it was understood that the proceeds of the sale of said bonds would be deposited in the bank until checked out by the depositors in the usual course of business. The bonds were lost while the bank was negotiating their sale through its correspondent in a distant city. We there held that this agreement made the bailment one for the mutual benefit of the parties, and not merely gratuitous, because there was the express agreement and understanding between the parties as a part of the contract of bailment that the bank was to receive the benefit named.

But appellant insists that the bonds were deposited in the bank with the understanding that the bank was to collect the interest coupons as they became due and credit the amount collected to the account of appellant, and that this, of itself, constituted appellee a bailee for hire in receiving the bonds for safe-keeping. Appellee denied that there was any such understanding, and this question was submitted to the jury, and they found against appellant's contention, finding that there was no such understanding.

[7] Having held that appellee was not an insurer of the bonds, we will now inquire whether it was a bailee for hire or a gratuitous bailee. It being undisputed that the bank did not receive any consideration for receiving the bonds as a special deposit for safe-keeping, and we having held supra that the fact that appellant was a customer of the bank, carrying a regular cash deposit account, was not a consideration supporting the special deposit of the bonds for safe-keeping, and the jury having found that the clipping of the interest coupons on said bonds and the amount being credited to appellant's cash deposit account was not in pursuance of any understanding between the parties at the time of the deposit of the bonds, and not a part of the contract of deposit of same, therefore it does not appear that there was any consideration moving to appellee for receiving the bonds as a special deposit for safe-keeping, and, that being true, the bailment was gratuitous, and appellee was liable only for gross negligence in the manner of keeping said bonds. In such case it seems to be the universal rule that a bailee without hire is responsible only for good faith and ordinary diligence, that is, such diligence as an ordinarily prudent man would exercise in matters of his own business, and this is to be determined by the jury under proper instructions by the court. Fulton v. Alexander, 21 Tex. 148; Preston v. Prather, 137 U. S. 604, 11 Sup. Ct. 162, 34 L. Ed. 788.

[8, 9] However, if it could be said that there was any consideration in any way moving to appellee in the reception of said bonds for safe-keeping, then it would be a bailee for hire, and would be held to reasonable care in the keeping of them. Appellant, by his ninth proposition, asserts that the jury's answer to the fourth special issue, wherein they acquitted appellee of gross negligence, thereby finding that appellee exercised reasonable care in the keeping of said bonds, is not supported by the evidence. The evidence shows that the bonds were placed in a burglar-proof safe—in a compartment of the safe having 16-inch thick steel walls— the safest place in the bank, and that they had been removed from a compartment in the bottom of the safe up into the other because it was considered to be the safest, and for the purpose of safely keeping the bonds; that when the cashier left the bank for lunch at noon he screwed in the heavy screw door of the safe, the door of the compartment where the bonds were; that the bank conducted its business, as to opening and closing the bank and locking the safe at the noon hour and closing the vault, in the usual and customary way that all other banks in that vicinity did; that the robbery was sudden, daring, and unexpected, and that, while one of the employés was alone in the bank at the time the robbers entered, another employé appeared within only a few minutes, and he was held at the point of a pistol and made to enter the vault, and that two or three customers came in the bank while the robbery was in progress, and they,

too, were ordered and made to go into the vault, and were locked up by the robbers. The bonds were in what was deemed the safest place in the bank, together with money and bonds of the bank and of other persons. It all occurred in a very short space of time, and the employés of the bank had no opportunity, short of sacrificing their lives, in preventing or trying to prevent the taking of the bonds by the robbers. The questions both of ordinary care and of gross negligence were submitted to the jury, and they found, as above shown, both issues in favor of appellee. We think the record contains abundant evidence to support both findings. Wilkinson v. Williams, 35 Tex. 181; Woodruff v. Painter, 150 Pa. 91, 24 Atl. 621, 16 L. R. A. 451, 30 Am. St. Rep. 786; Walpert v. Bohan, 126 Ga. 532, 55 S. E. 181, 115 Am. St. Rep. 114, 6 L. R. A. (N. S.) 828, 8 Ann. Cas. 89; Altman v. Aronson, 231 Mass. 588, 121 N. E. 505, 4 A. L. R. 1185; Smith v. Bank, 98 Am. Dec. 59; Colburn v. Washington State Art Ass'n, 80 Wash. 662, 141 Pac. 1153, L. R. A. 1915A, 594; DeHaven v. Bank, 81 Pa. 95.

By various assignments appellant attacks the answers of the jury to each of the special issues, insisting that they have no support in the evidence, and are against the great weight and preponderance of the evidence. We think the evidence is sufficient to support each of the findings, and the assignments are overruled.

Appellant assails the entire verdict of the jury in all their findings, and asserts that, as all the findings of the jury in answer to the special issues submitted were against appellant and in favor of appellee, "when in fact there was a great preponderance of evidence in favor of the plaintiff, and when there was almost no evidence in favor of the defendant to some of them, shows that the jury acted with a bias and purpose to make only such answers to all the issues as would be favorable to the defendant, and with a view not so much to find the facts as they should be as to render such answers as would enable the defendant to win its case; and that the findings were not supported by a preponderance of the evidence or by any reasonably sufficient evidence." We think the record, when considered as a whole, discloses sufficient support for each of the answers, and that same do not reveal any bias or prejudice on the part of the jury.

[10] Appellant's seventh and eighth propositions complain of improper argument before the jury on the part of appellee's counsel— that the case should be reversed "because the counsel for appellant, E. P. Miller, in his argument to the jury, said to them, 'If you wish to decide this case for the defendant, you must answer the first question "No," you must answer the second question "No," and you must answer the third question "Yes." '" It appears that counsel for defendant was

guilty of such argument, and that, when counsel for plaintiff objected to said argument and statements to the jury, the court stated to counsel for defendant that such argument was improper, and had been held reversible by the higher courts. The argument was improper; but, where the issues are so plain, and the effect of a finding on a special issue, either "Yes" or "No," so easily understood, as in the case at bar, it is but reasonable to conclude that jurors, who are presumed to be fair-minded, and men of average intelligence, can but fully comprehend the result of their finding, and hence should not cause a reversal of the judgment where it states what the jury was already bound to know. Railway v. Fleming (Tex. Civ. App.) 203 S. W. 108; Insurance Co. v. Griswold (Tex. Civ. App.) 212 S. W. 814; City of Dallas v. Maxwell (Tex. Civ. App.) 231 S. W. 435, 436; Railway Co. v. Casey (Tex. Civ. App.) 172 S. W. 729 (writ refused); Railway Co. v. Sheppard (Tex. Civ. App.) 189 S. W. 799. The argument, though improper, we think was harmless, and affords no ground for reversal.

[11, 12] Appellant further complains that—

"The court erred in overruling plaintiff's special exceptions Nos. 1, 2, 3, 4, 5, 6, 7, and 8, as shown in the first supplemental petition of plaintiff; all of which has been duly presented to the court."

It has been held many times that assignments such as this are too indefinite, and cannot be considered. Besides, the exceptions relate to as many and separate matters, and hence the assignment is multifarious, and for that reason cannot be considered.

[13] Appellant finally complains that the court erred in overruling its motion for judgment non obstante veredicto. The assignment is overruled. The doctrine of judgment non obstante veredicto does not obtain in Texas. Under article 1994, Vernon's Sayles' Civil Statutes, it is the duty of the court to enter judgment in conformity with the verdict, whether it be correct or not, and this whether the error in the verdict arose from erroneous instructions by the court or from a misinterpretation of the evidence by the jury. The court has the power to set aside the verdict, but it cannot render judgment in the face of the verdict. Railway v. Strycharski, 92 Tex. 10, 37 S. W. 415; Henne & Meyer v. Moultrie, 97 Tex. 216, 77 S. W. 607; Ablowich v. Bank, 95 Tex. 432, 67 S. W. 79, 881; Waller v. Liles, 96 Tex. 21, 70 S. W. 17; Telegraph Co. v. James, 41 Tex. Civ. App. 560, 91 S. W. 654; Kendrick v. Polk (Tex. Civ. App.) 225 S. W. 826; Mason v. Gantz (Tex. Civ. App.) 226 S. W. 435.

Believing no reversible error is shown, and that the judgment should be affirmed, it is so ordered.

Affirmed.