**BARDIN v. FIRST STATE BANK OF ARLINGTON et al.**

No. 13919.

Court of Civil Appeals of Texas.
Fort Worth.

June 2, 1939.

Rehearing Denied June 30, 1939.

Bryan, Stone, Wade & Agerton and Brandon Stone, all of Fort Worth, for appellant.

Ira Butler, of Fort Worth, for appellees.

BROWN, Justice.

The following are the facts established in the trial before the District Court, without the assistance of a jury: First State Bank of Arlington, Texas, duly incorporated under the laws of the State of Texas, in conducting its banking business, maintained a "Bond Department", by and through which it handled U. S. Government bonds that had been sold to its customers, receiving such bonds for deposit and safekeeping and collecting the interest accruing thereon and crediting the same amount of interest to the account of the depositor who owned the bonds.

R. H. Bardin, now deceased, a regular customer and depositor, on March 1st, 1920, deposited two U. S. Government bonds with said bank, taking a receipt therefor from the cashier, one B. C. Bass. This receipt recites, in substance, that it "certifies that R. H. Bardin has deposited with First State Bank of Arlington" two "Liberty Loan coupon ——% coupon bonds, returnable to the order of self or selves upon surrender of this certificate properly endorsed. Interest payable hereon in lieu of the interest on such bonds according to the terms and tenor of such bonds. All matured interest having been paid to above depositor." This receipt describes the bonds as one "$50.00 3rd" (meaning third Liberty Loan bond), and one "$500.00 4th" (meaning fourth Liberty Loan bond), and is duly signed by "B. C. Bass, Cashier".

On August 4th, 1929, Bardin withdrew the small bond from deposit and executed a receipt therefor, which recites: "Received of The First State Bank fifty dollars Liberty Loan Bonds of issue shown on margin. Charge to my account in the Bond Department." This was signed by R. H. Bardin and the marginal notation under "Bond Issues" shows "Third 4-¼% $50.00".

R. H. Bardin died intestate in the year 1934, leaving his widow, Mrs. Retta Bardin, as his only heir at law. There was no necessity for an administration upon his estate and none had.

Mrs. Bardin continued to do business with said bank, after her husband's death,

and up and until the bank became insolvent and closed its doors, about April 12th, 1937, and at which time the Banking Commissioner of Texas, as the proper liquidating agent, took charge of the bank and has since been engaged in its liquidation.

When the issue of a proper demand being made upon the State Banking Commissioner was being raised, for the purpose of showing that the District Court had jurisdiction of the cause, the following admissions and agreements were made in open court by counsel for the Banking Commissioner: "The defendants will admit that demand was made—properly made and rejected by the Banking Commissioner." Counsel for plaintiff: "You'll admit that demand was made on the Banking Commissioner?" Counsel for the Banking Commissioner: "Yes, as a predicate for your right to sue."

After Mrs. Bardin made demand upon the State Banking Commissioner for delivery of her bond, or its equivalent in value, and she was refused, she brought suit and the cause was tried to the District Court, and judgment rendered that the plaintiff take nothing. Hence the appeal.

It appears from the pass book, used by R. H. Bardin, that at regular intervals the interest on this $500 bond was credited to his account, and that after his death such was credited to the account of Mrs. Retta Bardin.

W. A. Whitley, an employee of the State Banking Commissioner, who was in charge of the defunct bank, testified that the records of the bank disclosed that in October, 1935, $650 worth of bonds were sold by the bank; that attached to the papers showing the sale there were three slips of paper and one of them showed that the Bardin $500 bond was sold and the proceeds deposited in the said bank in an account carried as "Thomas Spruance, Trustee".

In the agreed statement of facts, it is disclosed that when the bank closed its doors there was on deposit in the account of "Thomas Spruance, Trustee" the sum of $620.04.

The strongest position that the Banking Commissioner can take, in this case, as we see it, is that the Bank is a bailee and that appellant, Mrs. Bardin, is relegated to the right of recovery as for the conversion, or disposal, of bailed property.

Taking this position, we know that such monies as are received by the bailee, after disposing of the bailed property, constitute a trust fund, but that such monies must be distinctly traced in the assets of the bank, when the bank becomes insolvent; otherwise the wronged cestui que trust stands upon the same footing as general creditors.

We are of opinion that the record here shows that some one in the bank, presumably the Vice-president, Thomas Spruance, sold the $500 bond, and placed the funds derived therefrom in a certain account carried as "Thomas Spruance, Trustee". The funds were thus traced by the appellant to a special fund. This special fund showed to be, on the day the bank closed its doors, $620.04. There is nothing in the record to indicate that in creating such special account, Spruance ever intended to convert the funds that accumulated therein from time to time to his own use and benefit. The fact that he may have done so and did do so from time to time, does not change the status of the parties in this suit.

It was developed by liquidating agent Whitley's testimony that some person had deposited $400, as escrow money, with the bank and that this money was deposited by Spruance in the "Trustee account" and that the banking Commissioner had paid the sum of $400 to the party who so placed the money in escrow.

This left a balance in such "Trustee account" of $220.04.

If the Banking Commissioner had the right to pay any part of this "Trustee account" to the claimant who had deposited $400 in escrow, we are unable to see how, from this record, such claimant was entitled to payment in full, to the exclusion of the right of appellant.

There is nothing in the record to show that the escrow depositor's rights are superior to appellant's, and, taking the testimony of the liquidating agent at its full value, it is evident that there were two claimants who had a right to participate in the distribution of this "trust fund". One was entitled to $500 and the other to $400. One had the right to ⅝ths and the other to ⅜ths, there not being sufficient funds to pay both. The liquidating agent should have so distributed the "trust fund", according to our view.

This case is, in our opinion, not on a parity with Thornton v. Athens National Bank, Tex.Civ.App., 252 S.W. 278, 280, writ dismissed, nor is it like unto the other cases cited in appellees' brief, which arose in other jurisdictions.

The receipt given to the depositor in the Thornton case is worded as follows: "Wiley Thornton has deposited in this bank $2,000 government bonds bearing interest at 4½ per cent. The above bonds are left for safe-keeping and are the property of said Wiley Thornton, and are to be delivered to him or his assigns upon return of this receipt."

In that case the bailment was held to be gratuitous. But the receipt in the case before us specially provides: "Interest payable hereon in lieu of the interest on such bonds according to the terms and tenor of such bonds."

Thus it affirmatively appears that the depository bank contracted to pay to the owner of the bonds, while same were on deposit with it, the same interest as the bonds bore upon their faces.

What particular use the bank could and did make of such liquid assets in its hands that would enure to its advantage, while it held these bonds, is not disclosed and we do not feel the need of speculating upon same.

Suffice it to say that the bank believed the possession of such bonds, in its banking house, was of such value to it that it could afford to and did promise to pay the depositor the same rate of interest thereon as the bonds in fact bore upon their faces.

It seems to us no answer to say that the bank could not lose by the transaction because the bonds represented liabilities of the United States Government which, up to this hour, is a solvent and perfectly responsible debtor. The same could be said of a note executed by any responsible and solvent debtor.

The fact that the bank could not lose anything by reason of taking the bonds and assuming the payment of all interest that is provided for in the bonds is evidence to us of some substantial benefit accruing to the bank by reason of the possession of the bonds.

We believe that our conclusions are supported by Tyler County State Bank v. Shivers, Tex.Com.App., 6 S.W.2d 108, and First Nat. Bank v. Price, Tex.Civ.App., 262 S.W. 797.

Accordingly, the judgment of the trial court is reversed and judgment is here rendered for appellant against the said bank, for $500, and against the Banking Commissioner of Texas, as liquidating agent, for $344.46, and it is ordered that, upon payment by the Banking Commissioner of the sum of $344.46 to appellant, the judgment for plaintiff against said bank be credited with such sum, and the balance so remaining be and the same is here declared a judgment against said bank, classified as the claim of a general creditor of the bank.

It is so ordered.